IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-446-FL

| | |
|---|---|
| BRENDA REED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| JOHN HIESTER CHEVROLET OF ) | |
| LILLINGTON, LLC, ) | |
| ) | |
| Defendant. ) | |

This employment discrimination matter is before the court on defendant's motion for summary judgment (DE 29). The motion has been briefed fully, and the issues raised are ripe for ruling. For the following reasons, the motion is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this action on October 10, 2019, and filed amended complaint shortly thereafter asserting claims against defendant, her former employer, for disability discrimination through hostile work environment and retaliation, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111 and 12117 ("ADA"). Plaintiff seeks compensatory and punitive damages; costs, fees, and interest.

Following a period of discovery, defendant filed the instant motion for summary judgment on December 15, 2020. In support of the motion, defendant relies upon a statement of facts and excerpts of plaintiff's deposition with exhibits thereto. In addition, defendant relies upon affidavits

of three of its employees, Lyndsey Newton ("Newton"), Kathy Mashburn ("Mashburn"), and Nick Adcock ("Adcock").

Plaintiff responded in opposition on January 5, 2021, relying upon an opposing statement of material facts and the same deposition excerpts, supplemented by plaintiff's affidavit. In addition, plaintiff relies upon defendant's responses to plaintiff's interrogatories, and a February 24, 2018, text message from Newton to plaintiff. Defendant replied shortly thereafter in support of the instant motion.

## STATEMENT OF FACTS

The undisputed facts, and facts viewed in the light most favorable to plaintiff, may be summarized as follows. Newton, who is defendant's business development manager, and Keith Tripp ("Tripp"), its general manager, "interviewed and hired [p]laintiff on August 15, 2017, as a receptionist." (Def's Stmt. (DE 30) ¶ 1).[1] "Newton and Tripp were aware of Plaintiff's disability at the time of her hire," because she walked with a cane. (Id. ¶ 2; Newton Aff. ¶ 6).

Plaintiff alleges that women in the business development center of defendant's car dealership "would huddle together when . . . they'd be outside on their breaks." (Pl's Dep. 27).[2] Plaintiff "would go out for [her] break, and they would just stand there and look [her] way and whisper and laugh," and plaintiff "felt like they were laughing at [her] and [her] disability." (Id.). At no time was plaintiff harassed by anyone in a supervisory role. (Def's Stmt. ¶ 4). At no time

---

[1]  Pursuant to Local Rule 56.1(a)(2), the court cites to paragraphs in defendant's statement of facts, or portions of such paragraphs, where not "specifically controverted by a correspondingly numbered paragraph in the opposing statement."

[2]  All citations in this order to depositions provide the page number showing on the face of the document, and not the page number or docket entry number supplied by the court's electronic case filing system. In all other citations to documents to the record, if there is a discrepancy between an internal page number and the number assigned by the court's electronic case filing system, the assigned number is cited.

2

during her employment did plaintiff tell any supervisors that she felt defendant's business development center employees were harassing her based on her disability. (Id. ¶ 5).

In 2016, "[b]ecause of an increase in sales volume," defendant "needed an additional person in the accounts receivable department." (Mashburn Aff. ¶ 9). Defendant's controller, Mashburn, promoted former receptionist Rae Renink ("Renink") to the new accounts receivable position because of her good performance and tenure with defendant. (Def's Stmt. ¶ 8). "[I]n the winter of 2017-2018, sales volume declined, and [defendant] no longer needed the extra person in [a]ccounts [r]eceivable." (Mashburn Aff. ¶ 11).

During a meeting with defendant's office manager, Tina Watson ("Watson"), on Friday, February 23, 2018, Mashburn "decided to eliminate [Renink's] position." (Id. ¶ 12). "However, instead of terminating [Renink] when [Mashburn] eliminated her position, [she] decided to keep [Renink] because of her seniority and performance, terminate [plaintiff], who was relatively new, and move [Renink] back to reception." (Id.).

"On February 24, 2018, [p]laintiff saw Michael Perez ("Perez") doing a crooked walk that she believed was an imitation of her." (Def's Stmt. ¶ 11). "Perez was not [an] employee [of defendant], but rather worked for a detailing vendor called Buffmasters." (Id. ¶ 12). "Perez did not say anything to [p]laintiff and was not even aware that she was present as she was hidden between two air conditioning units." (Id. ¶ 13). "Plaintiff then complained to Sales Manager Nick Adcock ("Adcock") that Perez was making fun of the way she walked." (Id. ¶ 14). In particular, plaintiff testified as follows:

> . . . . I said, "Michael Perez just walked down the sidewalk making fun of the way I walk."
>
> And [Adcock] was like, "What"?
>
> So I repeated myself. And by then, my voice was going up an octave I'm sure. And evidently, [Perez] had gone upstairs to the break room, and he heard me.

3

> And he leaned over the balcony and he said, "No, ma'am. No, ma'am. I no [sic] do that."
>
> And I said, "What? Yes, you did." I said, "I sat out there and watched you."
>
> And [Adcock] was like, "Just calm down. Calm down."
>
> I said, "No. You didn't see what he did. He was out there making fun of the way I walk." And it just all just -- I was so upset.
>
> And [Adcock] wasn't doing anything. And [Perez] came downstairs and swore up and down he didn't do it. And [Adcock] just stood there. And I thought, "Well, aren't you going to do anything?"
>
> And so then [Newton] came up. And they were just standing there talking. And I said, "You know what?" I was so upset. I went to my desk. [Perez] and I thought [Adcock] was going to do something. So I went back to my desk and I stood there and I waited and I waited and I waited for somebody to come tell me something, and nobody ever did. So I went along with my job answering the phones.

(Pl's Dep. 33-34).

After plaintiff reported to Adcock Perez's alleged conduct, "Adcock then called Perez's boss at Buffmasters, Tony Chance ('Chance'), who told Adcock to talk to [Perez] for him since he was out of town." (Id. ¶ 15). "Adcock also called [defendant's] General Manager . . . Tripp, who also told him to talk to Perez." (Id.). "Perez claimed he was doing a dance." (Pl's Stmt. (DE 34) ¶ 16; see Def's Stmt. ¶ 16).

On February 28, 2018, Mashburn, who did not have any knowledge of the February 24, 2018, events, told Newton to terminate plaintiff, which she did. (Def's Stmt. ¶ 19). "Newton told plaintiff that she was being terminated due to layoffs." (Id. ¶ 20). "After her termination, [p]laintiff confirmed with Renink that she was in fact moved to reception." (Id. ¶ 21). "During its investigation, [p]laintiff told the Equal Employment Opportunity Commission ['EEOC'], 'I have no issues with the respondent's claim that they did not discriminate. A contracted employee is the one that harassed and mocked my disability.'" (Id. ¶ 22).

4

# COURT'S DISCUSSION

A.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

5

Case 5:19-cv-00446-FL    Document 39    Filed 08/19/21    Page 5 of 14

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

    1.  Hostile Work Environment

In response to defendant's motion, plaintiff states that she "does not oppose dismissal of her claim for Hostile Work Environment." (Pl's Mem. (DE 36) at 2). Accordingly, summary judgment is warranted in favor of defendant on plaintiff's hostile work environment claim.

    2.  Retaliation

To establish a prima facie case of retaliation, a plaintiff "must show (1) that she engaged in protected activity; (2) that [her] employer took an adverse action against her; and (3) that a causal connection existed between the adverse activity and the protected action." Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 578 (4th Cir. 2015). "The employer then has the burden to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions." Id. "The burden then shifts back to the plaintiff to show that the proffered reason is pretext." Id.

6

a. Causation

Generally, "close temporal proximity is sufficient to establish a disputed issue of fact as to the causation element of the prima facie case." Id. However, to establish a causal connection for purposes of the prima facie case, a plaintiff must show that "the relevant decisionmaker" was aware that the plaintiff had engaged in a protected activity. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). "[T]he employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." Id.

For purposes of this analysis, the relevant decisionmaker is "the one principally responsible for, or the actual decisionmaker behind," the adverse employment action. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 288–89 (4th Cir. 2004) (en banc), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013). Regardless of the knowledge of a subordinate or supervisor, "[i]t is the decision maker's intent that remains crucial." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 300 (4th Cir. 2010); see, e.g., Conrad v. CSX Transportation, Inc., 824 F.3d 103, 107 (4th Cir. 2016) (noting examples where "employee did not establish a prima facie case of retaliation because he failed to show that any of the decision-makers involved in his termination knew that he engaged in any protected activity," and "a lower-level supervisor's knowledge was not sufficient where the decision-makers had no knowledge—actual or constructive—of the employee's protected activity").

Here, plaintiff has not brought forth any evidence that the relevant decisionmaker was aware that plaintiff had engaged in a protected activity. Defendant's controller, Mashburn, testified that she, in a meeting with Watson,[3] "decided to eliminate [Renink's] position," on

---

[3] The court addresses further below plaintiff's objection to Mashburn's testimony regarding Watson, based upon the hearsay rule.

February 23, 2018 (Id. ¶ 12). "However, instead of terminating [Renink] when [she] eliminated her position, [she] decided to keep [Renink] because of her seniority and performance, terminate [plaintiff], who was relatively new, and move [Renink] back to reception." (Id.). They "told . . . Newton," as plaintiff's supervisor, to terminate plaintiff on February 28, 2018. (Id. ¶13). Thus, Mashburn was the relevant decisionmaker with respect to plaintiff's termination.

At the same time, there is no evidence that Mashburn, as relevant decisionmaker, knew about plaintiff's protected activity in complaining about harassment on February 24, 2018. Mashburn's testimony that "[plaintiff], nor anyone else, ever told me about the February 24, 2018, incident until long after [plaintiff] had been terminated," is undisputed. (Id. ¶ 6). Therefore, plaintiff has failed to demonstrate a genuine issue of material fact as to the third element of a prima facie case of retaliation, that there was a causal nexus between her protected activity and her termination.

Plaintiff raises several arguments pertinent to the causation element that are unavailing. Plaintiff suggests that Mashburn's testimony is not sufficient to support a summary judgment determination, because it is a "self-serving affidavit," and there is no other evidence to support defendant's claim that its decision to fire plaintiff was made on February 23, 2018. (Pl's Mem. at 4). There is, however, no bar to considering Mashburn's testimony in her affidavit, where it is based upon her personal knowledge. See Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Evid. 602.

Plaintiff also objects to consideration of statements in Mashburn's affidavit that refer to decisions made by Watson. The court presumes for the purposes of the instant analysis that Mashburn's testimony would only be admissible to show Mashburn's statements and Mashburn's decisions, and that Mashburn's testimony would not be admissible to show what Watson stated or decided. The absence of evidence about what Watson stated or decided, however, is immaterial

8

to the foregoing causation analysis. It is undisputed that Mashburn decided on February 23, 2018, to eliminate Renink's position, return Renink to reception, and terminate plaintiff. (Mashburn Aff. ¶ 12). Whether or not this is considered a decision along with Watson, or not, is beside the point, because there is no evidence that either Watson or Mashburn had made any different decision, or had any knowledge of plaintiff's protected activity on February 24, 2018.

Plaintiff also argues that Newton was a relevant decisionmaker because she was "the person who fired" plaintiff. (Pl's Mem. at 5). The causation element does not, however, turn on the identity of the person who carried out the termination, but rather "the one principally responsible for, or the actual decisionmaker behind," the adverse employment action. Hill, 354 F.3d at 288. In this respect, the court in Hill emphasized that a plaintiff "must come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer." Id. at 291. Here, plaintiff has come forward with no such evidence. The only pertinent evidence on the decision for plaintiff's termination is that Mashburn told Newton to terminate plaintiff, and there is no evidence that Newton had any part in this decision. (See Mashburn Aff. ¶12; Newton Aff. ¶10).

Therefore, summary judgment must be granted in favor of defendant because plaintiff fails to demonstrate a genuine issue of fact as to the element of causation.

      b.    Pretext

In addition, and in the alternative, plaintiff fails to demonstrate a genuine issue of fact as to pretext.

"In order to show pretext, a plaintiff may show that an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on

mistakes of fact." Haynes v. Waste Connections, Inc., 922 F.3d 219, 225 (4th Cir. 2019). In other words, a plaintiff may demonstrate pretext by showing "the defendant's explanation is unworthy of credence." Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 727 (4th Cir. 2019) (quotations omitted). A plaintiff "must cast sufficient doubt upon the genuineness of the explanation to warrant a jury's consideration of possible alternative and discriminatory motivations for the firing." Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 218 (4th Cir. 2016) (quotations omitted).

At the same time, "when an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Laing v. Fed. Exp. Corp., 703 F.3d 713, 722 (4th Cir. 2013) (quotations omitted). An "employee must present evidence reasonably calling into question the honesty of [her] employer's belief." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998). "[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." Id. (quotations omitted). In evaluating a justification for an adverse employment action, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Id. (quotations omitted).

Here, defendant has proffered a legitimate non-discriminatory reason for plaintiff's discharge, in the form of Mashburn's testimony that plaintiff was terminated because defendant had decided to eliminate Renink's position and move her back to reception. (Mashburn Aff. ¶ 12). Elimination of Renink's position was due to a decline in sales volume such that defendant did not need an "extra person in Accounts Receivable." (Id. ¶ 11). Further, defendant "decided to keep [Renink] because of her seniority and performance," and terminate plaintiff, "who was relatively new." (Id. ¶ 12).

10

Plaintiff raises several arguments in an effort to show pretext, which are unavailing. First, plaintiff contends that defendant's proffered reason for termination does not meet the threshold requirement of a "legitimate" reason because it is not "facially credible in light of the proffered evidence," citing Figueroa v. Pompeo, 923 F.3d 1078, 1087-88 (D.C. Cir. 2019). An employer's burden to proffer a legitimate, nondiscriminatory reason, however, is a "burden . . . of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000). It thus suffices at the production step in the analysis that defendant has proffered here a reason for termination, elimination of a position and replacement by a more senior employee, that is nondiscriminatory. (Mashburn Aff. ¶¶ 11-12). The court addresses plaintiff's argument instead in the context of the "pretext" standard in which the court considers whether "the employee's proffered explanation is unworthy of credence." Id. at 143.

Plaintiff argues that defendant's proffered reason for termination is not credible because Mashburn's testimony "is not supported by any documentary evidence." (Pl's Mem. at 6). Plaintiff asserts, for example:

> There is no testimony from the other alleged decisionmaker, . . .Watson. There are no e-mails memorializing the pair's alleged decision to layoff [plaintiff]. There is no evidence that there were any other employees of Defendant who were laid off as part of this alleged decision. Defendant has not submitted any documents evidencing a decline in sales volume.

(Id. at 4). This argument is unavailing because Mashburn's testimony, alone, provides material evidence of defendant's non-discriminatory reasons for discharge, particularly in light of her undisputed position as controller for defendant. (See Mashburn Aff. ¶¶ 4, 11-13). Plaintiff's assertions about what is not in the record are insufficient to demonstrate a genuine issue of material fact. The outcome would be different if plaintiff had presented contrary evidence, for example, that Watson had other reasons for plaintiff's discharge, or that there was, in fact, an increase in

11

sales volume. But, plaintiff does not offer any such evidence. See Matsushita, 475 U.S. at 586-87.

Moreover, Mashburn's testimony is corroborated, rather than contradicted, by other evidence in the record. For example, it is undisputed that "Mashburn had promoted former receptionist [Renink] to the new Accounts Receivable position because of her performance and tenure" with defendant. (Def's Stmt. ¶ 8; see Mashburn Aff. ¶ 10). It is also undisputed that Renink held plaintiff's position prior to 2016, and that plaintiff had been employed by defendant for less than seven months upon discharge. (Mashburn Aff. ¶¶ 8-9; Newton Aff. ¶¶ 5, 10). Furthermore, it is undisputed that "[a]fter her termination, [p]laintiff confirmed with Renink that she was in fact moved to reception." (Def's Stmt. ¶ 21). Accordingly, there is no basis upon which to conclude that defendant's proffered reason was false or based upon a mistake of fact.

Plaintiff suggests that Newton's explanation of the reason for plaintiff's termination is inconsistent with defendant's proffered reason for the termination as expressed in Mashburn's testimony. In particular, according to plaintiff, Newton said to her that "they were having to do layoffs and she was sorry, but she was going to have to let [plaintiff] go." (Pl's Dep. 42; see also Def's Stmt. ¶ 20 ("Newton told [p]laintiff that she was being terminated due to layoffs.")). Plaintiff asserts that the explanation based upon "layoffs" is not credible, because there is no evidence that any other employees were laid off. But, again, it is plaintiff's burden to come forward with evidence showing defendant's reason for termination was false. DeJarnette, 133 F.3d at 299. In addition, Newton's explanation and Mashburn's explanation are not in conflict because they both attribute plaintiff's termination to elimination of a position for economic reasons. Accordingly, the differences in Newton's and Mashburn's explanation for the termination are not sufficient to create a genuine issue of fact as to pretext.

Plaintiff also argues that Newton is not a credible witness because she asserts in her affidavit that she was not present in the office on February 24, 2018, when plaintiff alleges she was harassed by Perez. According to plaintiff, Newton was an eyewitness to the "immediate aftermath of the February 24, 2018, incident." (Pl's Mem. at 5). In addition, plaintiff points to a text message by Newton stating she "just sent the receptionist home" and asking plaintiff to come into the office, on February 24, 2018. (Id.). This conflict in the evidence is not material to the issue of pretext. The court has construed the conflicting evidence in the light most favorable to plaintiff, and it presumes that Newton in fact was present as plaintiff alleges for the "immediate aftermath of the February 24, 2018, incident." (Id.). Even presuming that Newton falsely denied being at work on February 24, 2018, this does not tend to show Mashburn's reason for deciding earlier to terminate plaintiff was false. At bottom, "the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace, 681 F.2d at 241.

Finally, plaintiff contends that "close temporal proximity," combined with plaintiff's evidence and testimony, is enough to rebut defendant's proffered reason for termination and create a genuine issue of fact for the jury to consider. (Pl's Mem. at 6). Plaintiff cites Basil v. Maryland Transp. Auth., No. CIV.A. RDB-12-0556, 2014 WL 1622321, at *7 (D. Md. Apr. 23, 2014), for the proposition that "[t]he close temporal proximity of [a plaintiff's] complaints to [her supervisors] and the end of her employment, though not itself dispositive, is probative of pretext." In Basil, though, the court did not rely upon close temporal proximity to show pretext. Rather, the court identified evidence that defendant "deviated from its usual practice in discharging [plaintiff] before her medical retirement was final," and "reversed course with regard to specific representations made to [the plaintiff]." Id. Such "inconsistent applications of [defendant's] policies could lead a reasonable jury to the conclusion that [the plaintiff's] rejection . . . was

13

pretextual." Id. Unlike in Basil, plaintiff here does not allege any such equivalent deviations from usual practices in this case, nor any other evidence that "cast[s] sufficient doubt upon the genuineness of the explanation to warrant a jury's consideration of possible alternative and discriminatory motivations for the firing." Guessous, 828 F.3d at 218.

Therefore, summary judgment is required because plaintiff fails to bring forward sufficient evidence to demonstrate a genuine issue of fact as to pretext.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 29) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 19th day of August, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge